# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RANDALL W. FOSTER,

 Plaintiff,

 v.

USIC LOCATING SERVICES, LLC,

 Defendant.

Case No. 16-2174-CM

## MEMORANDUM AND ORDER

This matter comes before the court on defendant USIC Locating Services, LLC's Motion for Partial Summary Judgment (Doc. 115). Plaintiff Randall W. Foster brings this action against defendant for negligence after he was injured when he struck a buried and unmarked power line with a shovel. Defendant moves for summary judgment on plaintiff's spouse's claim for loss of consortium, on plaintiff's claim for punitive damages, and on claims and measures of damage that depend on expert testimony that defendant has sought to exclude. For the reasons set for the below, the court grants defendant's motion in part and denies it in part.

**I. Background**

Plaintiff is employed by Rylie Equipment & Contracting Company. On March 26, 2014, plaintiff and his co-worker were working on a project to run underground fiber optic cable into a State Farm office at 6011 Nieman Road in Shawnee, Kansas. Prior to beginning work on the project, plaintiff's supervisor contacted the Kansas One-Call system to have the underground utilities in the area located and marked. The locating work was performed by defendant's employee Randy Phienthamkan.

Upon arriving at the scene to begin the project, plaintiff conducted a walk-through of the jobsite and reviewed an AT&T map of the area showing buried utilities, including an underground power line

in the general area where the accident occurred. Plaintiff observed three streetlight poles and red markings that indicated a buried electric power line ran between the first and second poles. There were no markings in between the second and third poles, which, according to plaintiff, meant Phienthamkan had determined no underground services were buried in that area.

Plaintiff began work in the unmarked area using an underground boring machine or horizontal directional drill. While plaintiff was operating the drill, the machine's striker alert system sounded an alarm. Plaintiff did not call the One-Call center, defendant, or the utility operator. Instead, plaintiff withdrew the drill and began digging by hand with a metal shovel in the area where the drill was located when the alarm sounded. The hole plaintiff was digging was filled with water and mud, and plaintiff could not see far into the hole. As he was digging, plaintiff struck a live wire and suffered an electrical shock. He was thrown back and briefly lost consciousness.

Plaintiff filed this suit on March 18, 2016 for negligence based on defendant's failure to locate and mark the live electrical wire in the area he was working. He also made claims for punitive damages and loss of consortium for his spouse. Defendant now moves for partial summary judgment on the issue of loss of consortium, punitive damages, and any issues relating to expert testimony that defendant has moved to strike.

**II.     Legal Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" factual dispute requires more than a mere scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party demonstrates an absence of evidence in support of an element of the

case, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The nonmoving party "may not rest upon the mere allegations or denials of his pleading." *Id.*

In making the summary judgment determination, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 252.

### III. Analysis

Defendant moves for partial summary judgment on three issues: (1) loss of consortium, (2) punitive damages, and (3) on any claims and measures of damage that depend on excluded expert testimony. Defendant filed three motions to exclude expert testimony (Docs. 109, 111, 113), and asks this court to grant judgment on any claims or damages that depend on this testimony. The court will issue more detailed orders on these three motions, but will briefly discuss how those decisions affect defendant's current motion.

*a. Loss of Consortium*

The court will first address defendant's motion for judgment on the issue of loss of consortium. Defendant argues that judgment is appropriate because plaintiff did not properly plead a claim for loss of consortium for his spouse. In the complaint and amended complaint, plaintiff included loss of consortium for his wife as part of his claim for damages, rather than as a separate cause of action. Defendant claims that under Kansas law, loss of consortium must be pleaded as an entirely separate action rather than a type of damage sought as a result of negligence. Plaintiff listed loss of consortium

-3-

for his spouse as a claim in the pretrial order. Defense objected to this inclusion, arguing it was not properly pleaded. Defendant now argues that it would be prejudicial to let such claim continue because plaintiff's spouse was not listed in his initial disclosures and no discovery was conducted on these issues because it was unclear whether this was a claim plaintiff intended to pursue. Defendant also maintains it was unclear whether plaintiff intended to pursue this issue because there was evidence that he and his wife had separated.

In response, plaintiff concedes he did not originally plead loss of consortium as a separate cause of action, but argues defendant had been on notice since the original complaint had been filed that he intended to pursue a loss of consortium claim. Plaintiff also notes that the loss of consortium claim was referenced in his initial disclosures and in interrogatory answers. Plaintiff claims defendant was on notice of the issue but chose not to address it until it was too late for plaintiff to remedy the problem, stating, "[a]pparently Defendant has chosen until now to ignore the issue, relying on a strained interpretation of the *Larson* decision, to create a 'gotcha' argument at a point in this case when Defendant can argue that it is too late for Plaintiff to fix the problem." (Doc. 131, at 10.)

Defendant's argument is based on a 2012 District of Kansas decision in which the court found that the language of K.S.A. § 23-2605 suggests that "the legislature intended that loss of consortium be an entirely separate action and not merely an additional type of damage that can be included in a claim for negligence." *Larson v. Wal-Mart Stores, Inc*., No-12-2056-JTM, 2012 WL 2449848, at *2 (D. Kan. June 27, 2012). In *Larson*, the court found that the plaintiff did not preserve her claim for loss of consortium under the Kansas saving statute because she only sought damages for loss of consortium in the original action and did not properly plead it as a separate cause of action. *Id.* at *3.

Plaintiff directs the court to *Ehsan v. Patel*, No. 06-2174-CM, 2007 WL 496861 (D. Kan. Feb. 13, 2007) in which this court allowed a husband, who brought a loss of consortium claim in his own

name, to substitute his wife's estate as the plaintiff after the statute of limitations had expired. This court found the plaintiff's failure to name the real party in interest was an "understandable mistake of law," and it was reasonable to allow the amendment because "[d]efendant was put on notice of the loss of consortium claim and knew the real party in interest before the statute of limitations expired," and plaintiff had "requested to substitute the real party in interest as soon as it learned of its mistake." *Id.* at \*2.

Plaintiff claims that like in *Ehsan*, defendant was on notice of the loss of consortium claim, and therefore, it was properly brought as a claim in the pretrial order. However, unlike in *Ehsan*, plaintiff here did not attempt to remedy the issue even after he learned of the mistake. In correspondence attached to defendant's reply to the motion for partial summary judgment (Doc. 141), defendant mentioned to plaintiff that Kansas law requires loss of consortium to be pleaded separately and not just listed as a component of damages. (Doc. 141-3.) This email exchange occurred on August 10, 2017. Plaintiff did not attempt to remedy the issue until he added the loss of consortium claim to his list of claims in the pretrial order, which was filed on December 7, 2017 after the pretrial hearing on October 26, 2017. And further, plaintiff was made aware of the issue long before the October 16, 2017 discovery deadline. Had plaintiff moved to amend the complaint to correctly plead a claim of loss of consortium, defendant would have had time to conduct discovery on the claim. While defendant may have been on notice that plaintiff intended to pursue a loss of consortium claim, it seems plaintiff was equally on notice—long before the pretrial conference—that a loss of consortium claim needed to be pleaded as a separate cause of action.

Instead of moving to amend, plaintiff added the loss of consortium claim to his list of legal claims in the pretrial order. Because the loss of consortium claim had never been pleaded properly, defendant argues this addition was the same as seeking leave to amend the complaint. *See Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) ("Because the pretrial order is the controlling

document at trial, a plaintiff's 'attempt to add a new claim to the pretrial order [is] the equivalent of asking leave to amend his complaint, and must be evaluated by the court under the standards set forth in Rule 15(a).'") Under Rule 15(a), leave to amend "shall be given when justice so requires," however, "if there has been undue delay on the part of the plaintiff in raising the claim, the district court may properly deny the motion as untimely." *Id.* The Tenth Circuit focuses primarily on the reasons for the delay, and has affirmed denials of leave to amend "when the party filing the motion has no adequate explanation for the delay." *Id.*

Plaintiff argues that there was no delay because the loss of consortium claim "was asserted, it simply was not denominated 'Count IV.'" (Doc. 131, at 9.) It is true plaintiff included loss of consortium amongst the claimed damages in the complaint and amended complaint. But under the rule in *Larson*, "the legislature intended that loss of consortium be an entirely separate action *and not merely an additional type of damage* that can be included in a claim for negligence." 2012 WL 2449848, at *2 (emphasis added.) And plaintiff was put on notice of this rule in the August 10, 2017 email exchange with defense counsel. But again, plaintiff did not attempt to remedy the issue. The court finds that plaintiff's delay in seeking an amendment is justification for denying leave to amend.

Kansas law requires loss of consortium to be pled as a separate cause of action, and plaintiff was on notice of that requirement when he still had time to attempt to correct his pleadings while discovery was still open. But plaintiff did not attempt to properly plead the loss of consortium claim until he added it to the pretrial order. Because of the undue delay in seeking to amend his complaint, the court finds that summary judgment on the issue of loss of consortium is appropriate and grants defendant's motion.

*b. Punitive Damages*

Defendant next moves for summary judgment on plaintiff's claim for punitive damages. Under Kansas law, "punitive damages are awarded to punish the wrongdoer for his malicious, vindictive or

willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs." *Pekarek v. Sunbeam Products, Inc.*, 672 F. Supp. 2d 1161, 1192 (D. Kan. 2008). A plaintiff must prove he is entitled to punitive damages by providing "clear and convincing evidence that a defendant acted toward the plaintiff with willful or wanton conduct." *Id.*

In the pretrial order, plaintiff claims he is entitled to punitive damages based on the locator, Randy Phienthamkan's, "deliberate failure to seek assistance to resolve the inconsistency between what he saw on the scene and what was represented on the KCP&L print in a manner most likely to preserve human life and safety . . . ." (Doc. 120, at 10.) Plaintiff also claims punitive damages due to "the failure of [defendant] personnel to locate the buried electric line north of the middle street light pole on three occasions, each time hooking their equipment to a light pole not connected to the circuit neutral, [which] reflects a level of gross incompetence justifying punitive damages." (Doc. 120, at 10.)

Defendant argues that plaintiff has not included any allegations that defendant authorized or ratified the alleged negligent conduct of its employees. Under Kansas law, punitive damages may not be assessed against an employer for the acts of its employee "unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the employer." K.S.A. § 60-3701(d)(1). The Kansas Supreme Court has held that authorization "may be either express or implied and generally is accomplished before or during the employee's questioned conduct." *Smith v. Printup*, 866 P.2d 985, 1003 (Kan. 1993). Further, ratification "may be either express or implied and may be accomplished before, during, or after the employee's questioned conduct. It may be based on an express ratification or based on a course of conduct indicating the approval, sanctioning, or confirmation of the questioned conduct." *Id.* The fact that an employee caused a foreseeable injury alone is not enough to support a punitive damage claim against an employer under Kansas law. *See Stallings v. Werner Enters., Inc.*, 598 F. Supp. 2d 1203, 1215 (D. Kan. 2009).

Plaintiff argues there is evidence of defendant's ratification of Phienthamkan's conduct, noting that defendant did not discipline Phienthamkan for failing to locate the electric wire and that defendant continues to defend Phienthamkan's methods and decisions. Plaintiff also claims punitive damages are justified because defendant's employees failed to locate that same wire on three different occasions, each time hooking their equipment to a light pole not connected to the circuit neutral, which reflects a level of gross incompetence justifying punitive damages.

But, as defendant points out, plaintiff did not include in his claim in the pretrial order that he was entitled to punitive damages because defendant ratified Phienthamkan's, or any employee's, conduct. Any "claims, issues, defense, or theories of damages not included in the pretrial order are waived . . . ." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). Plaintiff even failed to controvert defendant's claim that "the Pretrial Order does not include any contention, allegation or claim that USIC authorized or ratified the conduct of the locator in failing to resolve a purported discrepancy in the course of his locating process," in its statement of uncontroverted facts. (Doc. 116, at 3.) Simply, plaintiff failed to state a claim for punitive damages against defendant, the employer, which would require pleading a claim for punitive damages based on authorization or ratification. *See A.H. ex rel Hohe v. Knowledge Learning Corp.*, 09-2517-DJW, 2011 WL 2084143, at *3–4 (D. Kan. May 24, 2011) (finding the plaintiff sufficiently pleaded punitive damages by showing (1) an employee of the defendant acted with willful or wanton conduct, fraud, or malice towards plaintiff, and (2) the employee's wrongful conduct was authorized or ratified by the defendant.) For these reasons, the court grants summary judgment on the issue of punitive damages.

    *c. Expert Testimony*

Finally, defendant moves for summary judgment on issues related to its motions to exclude certain experts designated by plaintiff. Defendant filed three motions to exclude expert testimony and asks this court to grant summary judgment on any issues supported by expert testimony that this court excludes through those motions. More detailed orders explaining the court's rationale for denying or granting those motions will follow, but for purposes of this motion, the court grants or denies summary judgment on the following issues:

(1) Defendant's motion for summary judgment is denied on plaintiff's claim that he suffers nerve pain in his right arm, hand, and right side, which is predicated on the medical opinion of Dr. Bernard Adams that plaintiff's symptoms are caused by the electrical strike.

(2) Defendant's motion for summary judgment is granted on plaintiff's theory of liability based on the opinion of Boyd Smith.

(3) Defendant's motion for summary judgment is granted on plaintiff's claims for future lost income based on the expert testimony of Michael Dreiling and Dr. Gary Baker.

(4) Defendant's motion for summary judgment is denied on plaintiff's claims for lost value of household services based on the expert testimony of Dr. Gary Baker.

**IT IS THEREFORE ORDERED** that defendant USIC Locating Services, LLC's Motion for Partial Summary Judgment (Doc. 115) is granted in part and denied in part. Defendant's motion as to loss of consortium and punitive damages is granted. The motion as to the theory of liability based on the expert testimony of Boyd Smith is granted. The motion as to the issue of future lost income based on the expert testimony of Michael Dreiling and Dr. Gary Baker is granted. The motion is denied as to any issues related to the medical opinion of Dr. Bernard Adams and as to claims for lost value of household services based on the expert testimony of Dr. Gary Baker.

Dated July 25, 2018, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**