# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RANDALL W. FOSTER,

    **Plaintiff,**

    v.

USIC LOCATING SERVICES, LLC,

    **Defendant.**

Case No. 16-2174-CM

## MEMORANDUM AND ORDER

This matter comes before the court on defendant USIC Locating Services, LLC's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial (Doc. 213). After a two-week trial, a jury awarded plaintiff Randall W. Foster $354,090 in damages after determining defendant was partially liable for negligence in failing to mark a buried power line, which resulted in plaintiff's injuries after he struck the buried and unmarked power line with a shovel. Defendant claims there are several legal reasons why it is entitled to judgment as a matter of law, or, in the alternative, reasons why it was prejudiced in the first trial and is entitled to a new trial. For the reasons set forth below, the court denies defendant's motion.

    **I.**     **Background**

The facts of this case are well known to the court and the parties. Highly summarized, the relevant facts are as follows. Plaintiff was employed by Rylie Equipment & Contracting Company. On March 26, 2014, plaintiff and his co-worker were working on a project to run underground fiber optic cable into a State Farm office at 6011 Nieman Road in Shawnee, Kansas. Prior to beginning work on the project, plaintiff's supervisor contacted the Kansas One-Call system to have the underground utilities

in the area located and marked. The locating work was performed by defendant's employee Randy Phienthamkan.

Upon arriving at the scene to begin the project, plaintiff conducted a walk-through of the jobsite and reviewed an AT&T map of the area showing buried utilities, including an underground power line in the general area where the accident occurred. Plaintiff observed three streetlight poles and red markings that indicated a buried electric power line ran between the first and second poles. There were no markings in between the second and third poles, which, according to plaintiff, meant Phienthamkan had determined no underground services were buried in that area.

Plaintiff began work in the unmarked area using an underground boring machine or horizontal directional drill. While plaintiff was operating the drill, the machine's striker alert system sounded an alarm. Plaintiff did not call the One-Call center, defendant, or the utility operator. Instead, plaintiff withdrew the drill and began digging by hand with a metal shovel in the area where the drill was located when the alarm sounded. The hole plaintiff was digging was filled with water and mud, and plaintiff could not see far into the hole. As he was digging, plaintiff struck a live wire and suffered an electrical shock. He was thrown back and briefly lost consciousness.

Plaintiff filed this suit on March 18, 2016 for negligence based on defendant's failure to locate and mark the live electrical wire in the area he was working. A jury trial commenced on September 10, 2018. On September 21, 2018, the jury returned its verdict, finding defendant 37 percent at fault, plaintiff 15 percent at fault, plaintiff's employer Rylie Equipment & Contracting Company 37 percent at fault, and Kansas City Power and Light ("KCP&L") 11 percent at fault. (Doc 210.) Defendant then timely filed the present motion.

**II.    Legal Standards**

*A.    Renewed Motion For Judgment As A Matter Of Law*

In reviewing a motion for judgment as a matter of law, this court must determine whether the evidence, viewed in the light most favorable to the nonmoving party, presents a disagreement sufficient to mandate submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir. 1993). The court is mindful that judgment as a matter of law should be "cautiously and sparingly granted." *Black v. M & W Gear Co.*, 269 F.3d 1220, 1238 (10th Cir. 2001) (quoting *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996)). Granting such a motion is appropriate only if the evidence "points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1293 (10th Cir. 2002) (quotation omitted); *see also Freeman v. Gerber Prods. Co.*, 506 F. Supp. 2d 529, 534–35 (D. Kan. 2007). The court does not weigh the evidence, pass on the credibility of the witnesses, or substitute its conclusions for those of the jury. *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir. 2001) (quotation omitted). However, judgment as a matter of law must be entered if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Roberts v. Progressive Indep., Inc.*, 183 F.3d 1215, 1219–20 (10th Cir. 1999) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir. 1996)).

### *B.     New Trial*

Motions for new trials are "not regarded with favor and should only be granted with great caution." *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991). The court should grant a new trial only in limited circumstances where "the court believes the verdict is against the weight of the evidence, prejudicial error has occurred, or substantial justice has not been done." *Wirtz v. Kan. Farm Bur. Servs.*, Inc., 311 F. Supp. 2d 1197, 1226 (D. Kan. 2004) (internal quotation marks and citation omitted); Fed. R. Civ. P. 59(a).

**III. Analysis**

Defendant moves for judgment as a matter of law on the following issues: (1) plaintiff failed to present sufficient evidence to support the existence or breach of a legal duty (2) plaintiff failed to demonstrate proximate cause, and (3) plaintiff did not present legally sufficient evidence regarding damages. In the alternative, defendant requests a new trial for the following reasons: (1) the Boyd Smith testimony was prejudicial, (2) defendant was prejudiced by the court's failure to give an intervening and superseding causation instruction, and (3) the verdict was against the weight of the evidence.

*A. Judgment As A Matter Of Law*

*a. Duty*

Defendant claims he is entitled to judgment as a matter of law because plaintiff failed to establish the existence of a legal duty or breach of that duty. Defendant first argues that it owed no duty to plaintiff to locate and mark the buried power line at issue because, pursuant to the Pretrial Order, plaintiff's negligence claim was based on defendant's alleged breach under the Kansas Underground Utility Damages Prevention Act ("KUUDPA"), K.S.A. § 66-1801. Defendant alleges that under the KUUDPA, the duty is placed on the facility operator to locate underground power lines. Under the statute, the facility operator is the company that owns the underground lines, which here, is KCP&L. Therefore, as the locating service hired by the operator, it owes no duty to plaintiff under the statute.

Plaintiff, however, responds that his negligence claim was not predicated on the KUUDPA and defendant owed him a common-law duty to exercise reasonable care while performing the duty of locating and marking underground power lines.

Under Kansas law, a plaintiff "must first prove the existence of a duty owed to him or her by the defendant." *South ex rel. South v. McCarter*, 119 P.3d 1, 8 (Kan. 2005). The existence of a duty is a question of law for the court. *Id.* "To find a legal duty to support a negligence claim, (1) the plaintiff

must be a foreseeable plaintiff and (2) the probability of harm must be foreseeable." *Manley v. Hallbauer*, 423 P.3d 480, 483 (Kan. 2018). And once a duty has been established, "a person generally has the duty to act as a reasonably prudent person would act in similar circumstances." *Id.* So, in other words, "an individual must act like a reasonably prudent person toward another individual if there is some sort of relationship between the two individuals that justifies imposing a legal obligation on one or the benefit of the other—a relationship based on foreseeability." *Manley v. Hallbauer*, 387 P.3d 185, 188 (Kan. Ct. App. 2016).

Further, under the Restatement (Second) of Torts §324A—recognized by the Kansas Supreme Court—

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>     (a) his failure to exercise reasonable care increases the risk of such harm, or
>     (b) he has undertaken to perform a duty owed by the other to the third person, or
>     (c) the harm is suffered because of reliance of the other or third person upon the undertaking.

*Roe ex. rel. Roe v. Dept. of Soc. & Rehab. Servs. for State*, 102 P.3d 396, 403 (Kan. 2004).

Under the KUUDPA, an excavator—defined as "any person who engages directly in excavation activities within the state of Kansas,"—has a duty to locate all underground facilities before engaging in excavation. *See* K.S.A. § 66-1802(e), § 66-1803. An excavator also has a duty to exercise reasonable care for the "protection of any underground facility in and near the construction area when working in close proximity to any such underground facility." K.S.A. § 66-1809. An operator—defined as "any person who owns or leases an underground tier 1 or tier 2 facility"—has two working days to "inform the excavator of the tolerance zone of the underground facilities . . . in the area of the planned excavation by marking, flagging or other acceptable method." K.S.A. § 66-1806(a).

Again, defendant argues that it owed no duty to plaintiff under the KUUDPA because it is not the operator of the facilities at issue. It is undisputed that KCP&L is the operator of the facilities at the site at issue as defined by the KUUDPA. If plaintiff's cause of action against defendant was based solely on violations of the KUUDPA, plaintiff's claim would legally fail, as defendant is not the operator as defined by the statute. However, in closely reviewing the Pretrial Order and the jury instructions, the court is not convinced that plaintiff based his claim on a breach of the KUUDPA. Under the "Legal Claims of Plaintiff" section of the Pretrial Order, plaintiff states:

> The Kansas Underground Utility Damage Prevention Act, K.S.A. § 66-1801 to 1816, as supplemented by Kansas Administrative Regulations K.A.R. 82-14-1 to 82-14-6, imposes a duty to locate underground facilities before construction work may commence. Plaintiff's employer, through the Kansas One-Call system, requested location services which by contract were performed by USIC on behalf of KCP&L. Plaintiff asserts that he is entitled to recover upon the following theories: . . .

(Doc. 120, at 9.) Although the Pretrial Order supersedes all pleadings, a review of the Amended Complaint shows that plaintiff's claim against defendant was for negligence, and there was no mention of the KUUDPA. (Doc. 39, at 3.)

The court is not convinced that plaintiff intended to predicate his negligence claim on a violation of the KUUDPA, and the duty defendant owed to plaintiff was not derived from the statute. As discussed above, under Kansas common-law, a legal duty exists so long as the plaintiff and the probability of harm are foreseeable. And a party who render services to another is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking. Therefore, since defendant was hired by KCP&L—the operator of the utilities—to locate the utilities as required by the KUUDPA, Kansas law imposes a separate duty on defendant to undertake such act in a reasonable manner. Under Kansas common-law, defendant owed plaintiff a duty of reasonable care. The court does not interpret plaintiff's mention of the KUUDPA in the Pretrial Order as intent to exclusively base his negligence claim on the statute. The court therefore finds that plaintiff established the existence of

defendant's legal duty.  The court is also not convinced by defendant's allegation that the KUUDPA preempts the field, thus precluding a common-law negligence claim against defendant.

> *b. Breach*

Defendant next argues that the evidence at trial did not establish a breach of duty.  Defendant notes that plaintiff's liability expert, Greg Booth, concluded that the locator was negligent because he either (1) did not actually perform any locating work on the property, or (2) simply copied the prior marks made by the previous locator.  Defendant maintains that the evidence at trial contradicts both theories, and therefore, no evidence was presented to establish that the locator was negligent in the methods he used during the locate.

In response, plaintiff points to other portions of Booth's testimony and testimony from other witnesses to show that there was expert testimony to support the jury's finding that defendant's locator was negligent in his locate.

Because the court finds that plaintiff's claim was not based on the KUUDPA, and instead was a common-law negligence claim, it is irrelevant what constitutes breach under the KUUDPA.  Instead, the court—mindful that the evidence should be viewed in the light most favorable to plaintiff—finds that there is evidence in the record to support the jury's verdict.  The jury heard both parties' experts and properly weighed the available evidence in reaching their conclusion that defendant was at least partially at fault and breached its duty to plaintiff.  For these reasons, defendant is not entitled to judgment as a matter of law on the issues of duty and breach.

> *c. Causation*

Defendant argues that plaintiff failed to demonstrate causation of his alleged injuries because (1) the evidence establishes that plaintiff's own negligence was the intervening and superseding cause of his

injury, (2) there was insufficient evidence of causation with regard to his nerve injury, and (3) there was insufficient evidence of causation with regard to his shoulder injury.

First, defendant claims that the evidence establishes that plaintiff's own negligence was the intervening and superseding cause of his injury, which breaks the causal connection to any negligence by defendant. Defendant argues that plaintiff's conduct, after the strike alarm on his machine sounded, was both in violation of the KUUDPA and unforeseeable, and that but for his decision to dismount the machine and dig after the strike alarm sounded, he would not be injured. Defendant maintains plaintiff had an independent duty to ensure his own safety, and his failure to do so was the intervening, superseding cause of his injuries.

To prove legal causation, a plaintiff must show that it was foreseeable that a defendant's conduct might create a risk of harm, and "that the result of that conduct and contributing causes were also foreseeable." *Russell v. May*, 400 P.3d 647, 662 (Kan. 2017). An intervening cause is "one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." *Id*. An intervening cause only absolves a defendant of liability if it "supersedes the defendant's negligence." *Id*. (noting, "the superseding and intervening cause component breaks the connection between a negligent act and the harm caused."). However, if the intervening cause is reasonably foreseeable, the first actor's negligence "may be considered the proximate cause, notwithstanding the intervening cause." *Id.*

The court disagrees with defendant's portrayal of the alleged intervening and superseding causes in this case, particularly that it was unforeseeable that plaintiff would be injured by an unmarked power line. Locating companies, like defendant, exist to mark underground power lines to ensure safety during construction. Defendant was hired to mark underground utilities to prevent contact with buried power lines. It is foreseeable to defendant that its failure to mark an underground utility may result in injury or

-8-

damage to property. There was evidence that plaintiff acted negligently in his response after the strike alarm on his machine sounded, and the jury accounted for this negligence by assigning fault to both plaintiff and his employer. But the court does not find that this was unforeseeable to defendant such that it would supersede its own negligence.

As for defendant's arguments regarding plaintiff's failure to present evidence to establish causation for his nerve and shoulder injuries, the court finds that there was sufficient evidence presented at trial for the jury to conclude that the incident was the cause of plaintiff's injuries. Defendant claims that plaintiff failed to establish causation for his injuries because the expert testimony was unreliable or lacked foundation.

Regarding the nerve injury, plaintiff provided expert testimony via the video deposition of Dr. Bernard Abrams. Defendant again attempts to challenge this testimony, arguing it is unreliable because Dr. Abrams admitted that he would like the opportunity to re-interview plaintiff to resolve some inaccuracies, conflicts, and contradictions in the medical records. Yet, as plaintiff notes, Dr. Abrams also testified that he stood by his earlier conclusions. Defendant raised this very same issue in a pretrial motion to exclude. (Doc. 109.) The court ruled that Dr. Abrams's testimony was admissible, and any weaknesses in his opinions were better suited for cross-examination. There was no new testimony from Dr. Abrams at trial that was not available to the court when reaching its pretrial conclusions regarding admissibility. The court declines to reconsider its earlier decision at this point in the case. The jury properly weighed the evidence and the credibility of the witness and determined defendant was at least partially at fault for plaintiff's damages.

As for the shoulder injury, defendant argues that the expert testimony from Dr. Craig Satterlee was not based on sufficient foundation because the evidence presented at trial did not support Dr. Satterlee's conclusions. In reviewing Dr. Satterlee's trial testimony, however, the court finds there was

-9-

sufficient evidence for the jury to reach its conclusion. Although Dr. Satterlee may have testified on cross-examination that he was not present at the scene and did not see the actual incident, he also details a long history of treating plaintiff's injuries and concluded that plaintiff's shoulder injury was caused by the physical response he experienced after he was electrocuted. Again, it is up to the jury to determine the weight and credibility of evidence. For these reasons, the court declines to grant judgment as a matter of law on the issue of causation.

### *d. Damages*

Defendant argues it is entitled to judgment as a matter of law on certain damage claims, specifically plaintiff's claim for loss value of household services and damages for historic lost wages.

In regard to the household services damages, plaintiff claims that when the court granted summary judgment on plaintiff's claim for loss of consortium on behalf of his wife, this foreclosed plaintiff's opportunity to recover damages for lost value of household services. Defendant maintains that under Kansas law, damages for lost value of household services are recoverable only on behalf of a spouse on a loss of consortium theory. And defendant argues plaintiff should have been precluded from shifting those damages from his wife to himself, because he never pleaded such damages in the Pretrial Order.

The court, however, ruled during the pretrial hearing that evidence regarding these damages was admissible as proof of economic damages. The court took into account the fact that these damages had been pleaded in the Pretrial Order as loss of consortium damages, and the court had granted defendant summary judgment on the loss of consortium claim. But the court did recognize that since the filing of the Pretrial Order, plaintiff's family circumstances had changed, and he was separated from, and in the process of divorcing his wife. The court therefore found that evidence regarding the loss of household services damages was admissible as economic damages, and it would be up to the jury to decide whether

to award these damages. Defendant has not set forth a persuasive legal reason why the court should reconsider its pretrial decision. The court declines to grant judgment as a matter of law on the issue.

Defendant also takes issue with the expert testimony used to establish these damages, arguing Dr. Baker's opinion should have been excluded as unreliable and not based on sufficient foundation. But again, defendant is attempting to relitigate an issue the court resolved prior to trial. The court found Dr. Baker's opinion was admissible. The jury heard the testimony and awarded plaintiff economic loss damages. The court is unpersuaded that the jury's decision was not based on sufficient evidence. For these reasons, defendant is not entitled to judgment as a matter of law on the issue of damages for lost value of household services.

Defendant next argues it is entitled to judgment as a matter of law on damages for historic lost wages because the evidence shows that plaintiff declined a job assignment that would have provided him an opportunity to mitigate his damages. Plaintiff responds that while plaintiff was released by a doctor to return to work with restrictions, his failure to accept an accommodated position was not unreasonable because he was still suffering from nerve pain and, in fact, entered a pain management program.

As plaintiff points out, the jury was instructed on mitigation. The jury heard evidence on plaintiff's job opportunities, and his reasons for not accepting them. By awarding these damages, the jury found that plaintiff not returning to work, while still suffering from pain from the incident, was not unreasonable. The court will not disturb the jury's verdict, and finds defendant is not entitled to judgment as a matter of law on the issue of historic lost wages damages.

### *B.    New Trial*

#### *a.  Boyd Smith Testimony*

Defendant first argues that it is entitled to a new trial because the court erroneously admitted testimony from Boyd Smith and this evidence was prejudicial. Boyd Smith, who at the time of trial was

the owner/operator of Midwest Professional Utility Locating Services, was offered by plaintiff as a rebuttal expert. Defendant moved to exclude Smith from testifying as an expert, arguing his testimony was untimely disclosed primary liability opinion testimony rather than rebuttal testimony. The court agreed and found that Smith had not properly been designated as a rebuttal expert. The court, however, found that Smith could testify as a lay witness regarding the steps he took when he recreated the locate at the site at issue in this incident, but was precluded from testifying regarding any of his opinions about whether defendant's locator's conduct was reasonable.

Defendant now argues it is entitled to a new trial because Smith's testimony was irrelevant to any matter in the case and the evidence was unfairly prejudicial because of the risk it may confuse the jury. Plaintiff responds that Smith's testimony was relevant because it established that the electric line was in fact locatable using the same maps used by defendant's locator. Plaintiff also argues that defendant did depose Smith prior to trial and had a full opportunity to cross-examine Smith at trial.

The court agrees with plaintiff and stands by its pretrial ruling. Admitting Smith's limited testimony as a lay witness who performed a similar locate to the locate at issue was relevant to the issues in this case. Further, there was an abundance of other expert testimony on both sides to provide the jury with explanations as to why the line should have or may not have been locatable. The court does not believe that Smith's testimony, considered along with the rest of the evidence presented at trial, determined the outcome of the case. The court declines to grant a new trial on this issue.

### b. *Intervening/Superseding Cause Instruction*

Defendant next argues it is entitled to a new trial because it was substantially prejudiced by the court's refusal to instruct the jury on intervening and superseding causation.

"When the adequacy of a jury instruction is challenged, '[the court] consider[s] all the jury heard, and from the standpoint of the jury, decide[s] not whether the charge was faultless in every particular,

but whether the jury was misled in any way and whether it had an understanding of the issues and its duties to determine these issues.'" *Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1144 (D. Kan. 2010) (citing *Haberman v. The Hartford Ins. Grp.*, 443 F.3d 1257, 1274 (10th Cir. 2006)).

Defendant argues the evidence overwhelmingly established that the jury should have been instructed on intervening and superseding causes, and because the court did not include this instruction, the jury was misled about the circumstances in which they could render a defense verdict. Defendant did include Kansas Pattern Instruction § 104.03—Intervening Cause—as part of its proposed instructions. Plaintiff objected to the inclusion of this instruction. As part of its decision to not include this instruction, the court followed the Committee's "Notes on Use," which says, "The Committee believes that the applicable instructions in Chapter 105 are normally sufficient and that the above instruction should seldom be given." Chapter 105 of the Kansas Pattern Instructions covers comparative fault. Following the guidance of the Committee, and considering the evidence in the case, the court did not include the intervening cause instruction and instead decided that the comparative fault instruction was sufficient to instruct the jury that they may consider the conduct of other parties—including plaintiff—in determining fault for plaintiff's injury. At the time, and still after the fact, the court believes this instruction, considered along with the instructions as a whole, clearly articulated the law and the exclusion of the intervening cause instruction did not mislead the jury to the point that defendant would be entitled to a new trial.

### c. *Insufficient Evidence*

Defendant finally argues that it is entitled to a new trial because there was insufficient evidence to support the jury's verdict. Motions for new trial "should be granted with great caution," and when assessing whether there was evidence to support the verdict, the court must "examine the evidence in the light most favorable to the prevailing party, and focus on 'whether the verdict is clearly, decidedly or

overwhelmingly against the weight of the evidence.'" *Monsour's Inc. v. Menu Maker Foods, Inc.*, No. 05-1204-JTM, 2009 WL 89701, at * 2 (D. Kan. Jan. 13, 2009) (citing *Black v. Hieb's Enters., Inc.*, 805 F.2d 360, 363 (10th Cir. 1986)).

In arguing the verdict is contrary to the evidence presented at trial, defendant sets out a persuasive case for why its evidence was stronger than plaintiff's evidence, and for why the evidence supported a higher apportionment of comparative fault for plaintiff's negligence. But this argument is based on its view of the evidence in the light most favorable to defendant. Plaintiff presented evidence to support the jury's verdict. "The jury . . . has the exclusive function of appraising credibility, determining the weigh to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000). It is not up to the court to "substitute its judgment of the facts for that of the jury," and the court may only grant a new trial if the jury's verdict "was so against the weight of the evidence as to be unsupportable." *Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*, 295 F. App'x 885, 887 (10th Cir. 2008).

The court believes there was sufficient evidence presented at the nearly two-week trial that supported the jury's verdict. The verdict was not clearly, decidedly, or overwhelmingly against the weight of the evidence. For these reasons, defendant's motion for new trial is denied.

**IT IS THEREFORE ORDERED** that defendant USIC Locating Services, LLC's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial (Doc. 213) is denied.

Dated July 30, 2019, at Kansas City, Kansas.

                                              s/ Carlos Murguia
                                              **CARLOS MURGUIA**

**United States District Judge**